

February 1, 2021

<u>Sent via USPS Express Mail to:</u>

Widmaer Voltaire
Voltaire Motors, LLC
631 NE 27th Street
Pompano Beach, Florida 33064

In care of:
Widmaer Voltaire as Registered Agent
500 East McNab Road, Apartment 6
Pompano Beach, Florida 33060

### FINAL DEMAND FOR RETURN OF FUNDS, NOTICE OF INTENT TO SEEK TREBLE DAMAGES UNDER FLORIDA LAW, AND DEMAND FOR PAYMENT OF WAGES

Dear Mr. Voltaire,

I have the pleasure of representing Nancy Dunham ("Dunham"). Please accept this letter as demand for triple damages under Florida law related to the funds that Dunham tendered to you as payment for vehicles that you failed to deliver to either Dunham or her clients  In addition, this letter also addresses your failure to pay Dunham minimum wage for the hours she worked for Voltaire Motors, LLC, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. The FLSA violation will also require you to pay liquidated damages, and reimburse Dunham for her attorney's fees. ***We also demand a copy of your bond so that we may file a claim.*** If you are represented by counsel, please forward this letter to your attorney. Note that I have sent this letter via USPS Mail so that the legal presumption of receipt will apply.

A.   <u>Your liability for civil theft.</u>

First and foremost, we demand that you immediately return all money sent to you for automobiles that you failed to deliver to Dunham or her clients. As you know, Dunham forwarded approximately sixty thousand dollars ($60,000.00) to you as payment for five (5) automobiles that *you failed to deliver* as follows:

| | | | |
|---|---|---|---|
| 1) | 2010 Lexus | | $7,690.00 |
| 2) | 2009 Jaguar | | $9,800.00 |
| 3) | 2015 Mercedes | | $15,000.00 |
| 4) | Audi | | $13,000.00 |
| 5) | Black Honda | | $15,044.00 |

***Total received by Voltaire:***             ***$60,534.00***

As you know, Dunham physically received the Audi and the Black Honda, but you failed to complete paperwork required for the transfer of title. As you know, a car buyer cannot take ownership of a vehicle without being registered as the record owner on the title transfer. Because you failed to tender a drivable vehicle in exchange for the funds you collected via Dunham, any purchase contract is void and you are now responsible for returning the purchase funds for the vehicle to Dunham for return to her client.

Dunham has asked, demanded and even begged on multiple occasions that you return the funds or deliver the vehicles as promised. Your failure to respond is unconscionable and has forced Dunham to seek legal action. *Therefore, this letter shall serve as a formal demand, pursuant to §772.11, Fla. Stat., for treble damages in the amount of $181,602.00 related to your unlawful taking of Dunham's money.*

**EXHIBIT A TO AMENDED COMPLAINT**

§772.11, Fla. Stat., states, in part:

(1) Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand.

***VIA THIS LETTER, WE DEMAND THAT YOU TENDER TRIPLE THE AMOUNT OF $60,534.00 OR A TOTAL OF $181,602.00 WITHIN 30 DAYS OF YOUR RECEIPT OF THIS LETTER.***

B.   *You failed to pay minimum wage.*

Second, I have determined that you violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, because you failed to pay Dunham for her work at your company. It is my understanding that Dunham began working for you in February 2019 as an authorized buying representative for Voltaire Motors, LLC. Dunham generally worked 40 hours per car, and that her job duties included the following tasks:

- soliciting and finding customers;
- working with customers regarding budget and vehicles desired;
- vehicle research;
- attending auctions and bidding, such as via www.manheim.com;
- completion of purchase paperwork and registration;
- making arrangements for vehicle delivery.

If you attempt to claim that Dunham was an independent contractor, both the facts and the law suggest that she should have been classified as an employee. It is a well-established principle in both federal and Florida law that independent contractor status is determined by the nature of the duties and responsibilities of a worker, rather than the label used to describe the job.

I have reviewed paperwork that you required Dunham's son to sign when he previously served as an authorized buying representative for Voltaire, including an I-9 and W-4. These documents are required when an employer hires an employee. And, if you classified Dunham's son as an employee, then a court will likely find that Dunham would also be an employee because she performed the same work as her son.

If you claim that Dunham was simply bidding on auctions for fun, that position will lack merit. The FLSA defines employment with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326, 112 S.Ct. 1344, 1350, 117 L.Ed.2d 581 (1992). A business will be considered to "employ" a person if it "suffers or permits" the person to work. 29 U.S.C. § 203(g). The "suffer or permit to work" standard derives from state child-labor laws and has been called "the broadest definition [of employee] that has ever been included in one act." *Antenor v. D & S Farms,* 88 F.3d 925, 929 n. 5 (11th Cir.1996) "Where the work done, in its essence, follows the usual path of an employee, putting on an "independent contractor" label does not take the worker from the protection of the Act." *Harrell v. Diamond A Entm't, Inc.,* 992 F. Supp. 1343, 1348 (M.D. Fla. 1997). I had the opportunity to view a video you sent to her on how to bid for vehicles and training is suggestive of employee statutes.

In summary, you had a responsibility to pay Dunham for the hours she worked for Voltaire, and your failure to do so is a violation of the FLSA. If an employer knew or should have known that it violated the FLSA, an employee is permitted to recover liquidated damages in addition to back pay in an amount equal to the back wages due. You should have known that you violated the FLSA because you never paid Dunham ANY wages at all, which is absurd.

As noted above, Dunham worked approximately 40 hours on each car she purchased for Voltaire. She purchased five (5) cars that were paid and received on earlier occasions, in addition to the five (5) cars described above of which you received payment but failed to deliver, for a total of ten (10) cars.

EXHIBIT A TO AMENDED COMPLAINT

Ten (10) cars at 40 hours each is 400 hours total. Minimum wage in Florida is $8.56. ***This results in total back wages due in the amount of $3,424.00. Note that if we are unable to resolve these issues, I will perform additional investigation into Dunham's hours worked so this amount is subject to increase.*** You will also be required to reimburse Dunham for her attorneys' fees incurred in securing payment for her wages.

C. <u>Employers have the sole responsibility to maintain pay records.</u>

If you plan to argue that you had no idea how much Dunham was working, it is important for you to understand that, as an employer, it is YOUR sole responsibility to keep track of the hours worked by your employees, and to become familiar with the laws that apply to your business. If an employer knows or has reason to know that work is being performed, that time is always compensable under the FLSA even if the work was not specifically authorized, requested, or even if the employee failed to complain. 29 U.S.C. §§ 203(e) and 203(g); 29 C.F.R. §§ 785.6, 785.7, 785.11. Hours worked includes all of the time an employee is required to be on duty and/or all the time an employee performed services for her employer.

> Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, "[t]he remedial nature of this statute and the great public policy which it embodies ... militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment. *Id.* The employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and "[e]mployees seldom keep such records themselves." *Id.* ...Thus, in situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held "that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*

*Allen v. Bd. of Pub. Educ. for Bibb County,* 495 F.3d 1306, 1315-16 (11th Cir. 2007).

I have no doubt that you were aware that my client was working for Voltaire because you collected funds from her on behalf of her clients, you tendered the money to the auction houses, and you made arrangements for the transfers of title. You also served as Dunham's direct supervisor.

D. <u>You are individually liable for the FLSA violation.</u>

***Because you own Voltaire Motors, LLC, and you served as Dunham's direct supervisor, you will also be personally and individually liable for any violation of the FLSA.*** The FLSA defines the term "employer" to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" 29 U.S.C. § 216(b); *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1309 (11th Cir. 2013). A corporate officer with operational control is an employer along with the corporation and is jointly and severally liable for any FLSA violation. *Id.* In other words, both you and your company would be financially responsible for this violation of law.

E. <u>You have a duty to preserve evidence.</u>

Lastly, via this letter, you are on notice that under both federal and Florida law, ***you have a duty to preserve evidence***. This letter details only some of these duties, and this is a continuing obligation. You are obligated to retain, and refrain from altering, deleting or destroying, any and all objects, documents, and/or data, in any form, that may be relevant to potential litigation in this matter. In order to avoid any problems with evidence or retention of relevant information, we request that you immediately override any document or data destruction procedure or policy you currently have in place.

You should review your duty to preserve and protect electronic and non-electronic documents and other evidence. For example, Rule 1.350(a) of the Florida Rules of Civil Procedure defines the term "document" broadly and permits discovery of electronically stored information. As a result, your obligation is not only to preserve relevant paper documents, but to also preserve any and all relevant electronic records and data.

**EXHIBIT A TO AMENDED COMPLAINT**

   Such records and data include, but are not limited to, e-mail and other electronic communications, text messages, calendars, telephone logs, text files, HTML files, digital notes, instant messages, as well as network access information stored in the following: laptops, personal computers, internet data, handheld wireless devices, and voice mail. This obligation to preserve evidence includes information that is in your possession, custody or control, including items in the possession of third parties under your control. Any hard copies of the above-referenced information must be retained in addition to the electronic versions.

   In addition, as another example, Rule 1.280(b)(1), Florida Rules of Civil Procedure, describes the scope of information that can be obtained during discovery and states:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and identity and location of persons having knowledge of any discoverable matter.  It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

   Again, you have a legal obligation to follow these requirements and the court rules of procedure provide for sanctions against any person who destroys, damages, or misplaces evidence.

   F. *Conclusion and demand for payment.*

   Dunham does not desire to engage in litigation against you and Voltaire Motors, but she is unwilling to walk away without recovering the money you stole from her and her clients.

   *For settlement purposes only, and in a good faith effort to resolve this matter quickly, Dunham is willing to forego wage damages, and treble damages related to the Honda and Audi, if you process the title by March 1, 2021, and if you tender the remaining amount demanded for the civil theft claim* **in the amount of $129,960.00** *($43,320.00 times three (see statute § 772.11 above)* **on or before March 1, 2021***.  Please note that this offer of compromise is contingent on you making payment on time, and this offer is for settlement purposes only.*

   If you do not take advantage of this settlement offer, we will immediately file a lawsuit on March 2, 2021, and Dunham would be entitled to receive all of the following damages, which are subject to increase.

| | |
|---|---|
| ***Civil Theft Demand*** | ***$181,602.00*** |
| *Total Wrongfully Taken* | *$60,534.00* |
| | |
| ***Total Wage Demand*** | ***$8,848.00*** |
| *Unpaid Minimum Wages* | *$3,424.00* |
| *Liquidated Damages* | *$3,424.00* |
| *Attorney's Fees to date* | *$2,000.00* |

   I encourage you to seek legal counsel as soon as possible.  Please direct any and all communication intended for Nancy Dunham solely to my attention.  If you or your attorney have any questions, or wish to discuss this matter further, please do not hesitate to contact me at (813) 367-3677 or via email to kim@monticellolawfirm.com.

            Sincerely,

             *[signature]*

             Kimberly Isner Monticello
             Monticello Law Firm, P.A.

cc: Nancy Dunham

**EXHIBIT A TO AMENDED COMPLAINT**



KeyCite Yellow Flag - Negative Treatment
Unconstitutional or PreemptedPrior Version Limited on Preemption Grounds by In re Las Vegas Casino Lines, LLC, Bkrtcy.M.D.Fla., Apr. 06, 2011

West's Florida Statutes Annotated
  Title XLV. Torts (Chapters 766-774) (Refs & Annos)
    Chapter 772. Civil Remedies for Criminal Practices

West's F.S.A. § 772.11

## 772.11. Civil remedy for theft or exploitation

Effective: October 1, 2014
Currentness

(1) Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand. Any person who has a cause of action under this section may recover the damages allowed under this section from the parents or legal guardian of any unemancipated minor who lives with his or her parents or legal guardian and who is liable for damages under this section. Punitive damages may not be awarded under this section. The defendant is entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim that was without substantial fact or legal support. In awarding attorney's fees and costs under this section, the court may not consider the ability of the opposing party to pay such fees and costs. This section does not limit any right to recover attorney's fees or costs provided under any other law.

(2) For purposes of a cause of action arising under this section, the term "property" does not include the rights of a patient or a resident or a claim for a violation of such rights.

(3) This section does not impose civil liability regarding the provision of health care, residential care, long-term care, or custodial care at a licensed facility or care provided by appropriately licensed personnel in any setting in which such personnel are authorized to practice.

(4) The death of an elderly or disabled person does not cause the court to lose jurisdiction of any claim for relief for theft or exploitation when the victim of the theft or exploitation is an elderly or disabled person.

(5) In a civil action under this section in which an elderly or disabled person is a party, the elderly or disabled person may move the court to advance the trial on the docket. The presiding judge, after consideration of the age and health of the party, may advance the trial on the docket. The motion may be filed and served with the civil complaint or at any time thereafter.

**EXHIBIT A TO AMENDED COMPLAINT**

**Credits**

Laws 1986, c. 86-277, § 3; Laws 1988, c. 88-381, § 47; Laws 1989, c. 89-303, § 5. Amended by Laws 1997, c. 97-102, § 1181, eff. July 1, 1997; Laws 2002, c. 2002-195, § 2, eff. April 29, 2002; Laws 2014, c. 2014-200, § 8, eff. Oct. 1, 2014.

Notes of Decisions (187)

West's F. S. A. § 772.11, FL ST § 772.11
Current through Chapter 184 (End) of the 2020 Second Regular Session of the Twenty-Sixth Legislature

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT A TO AMENDED COMPLAINT

# USPS Tracking®

FAQs >

Track Another Package +

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More (https://reg.usps.com/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/st**

Remove ✕

**Tracking Number:** EJ328165714US

**Scheduled Delivery by**

**TUESDAY**
**2** FEBRUARY 2021 ⓘ  |  by **12:00pm** ⓘ

✓ **Delivered**

February 8, 2021 at 10:37 am
Delivered
POMPANO BEACH, FL 33062

Get Updates ⌄

---

Text & Email Updates ⌄

---

Proof of Delivery ⌄

---

Tracking History ⌃

**February 8, 2021, 10:37 am**
Delivered

EXHIBIT A TO AMENDED COMPLAINT

POMPANO BEACH, FL 33062
Your item was delivered at 10:37 am on February 8, 2021 in POMPANO BEACH, FL 33062. Waiver of signature was exercised at time of delivery.

**February 8, 2021, 10:03 am**
Arrived at Post Office
POMPANO BEACH, FL 33060

**February 6, 2021, 11:51 am**
Forwarded
POMPANO BEACH, FL

**February 2, 2021, 10:34 am**
Vacant
POMPANO BEACH, FL 33060

**February 2, 2021, 10:08 am**
Out for Delivery
POMPANO BEACH, FL 33060

**February 2, 2021, 9:57 am**
Arrived at Post Office
POMPANO BEACH, FL 33060

**February 2, 2021, 8:36 am**
Arrived at USPS Destination Facility
FORT LAUDERDALE, FL 33310

**February 1, 2021, 10:02 pm**
Departed USPS Facility
TAMPA, FL 33630

**February 1, 2021, 7:29 pm**
Arrived at USPS Origin Facility
TAMPA, FL 33630

**February 1, 2021, 3:08 pm**
USPS in possession of item
TAMPA, FL 33629

Feedback

**EXHIBIT A TO AMENDED COMPLAINT**

# USPS Tracking®

FAQs >

**Track Another Package** +

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More** (https://reg.usps.com/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/st

Remove ✕

**Tracking Number:** EJ328165691US

**Scheduled Delivery by**

**TUESDAY**
**2** FEBRUARY 2021 ⓘ

by
**12:00pm** ⓘ

## ✓ Delivered

February 2, 2021 at 10:21 am
Delivered, In/At Mailbox
POMPANO BEACH, FL 33064

Get Updates ⌄

Text & Email Updates ⌄

Proof of Delivery ⌄

Tracking History ⌃

**February 2, 2021, 10:21 am**
Delivered, In/At Mailbox

EXHIBIT A TO AMENDED COMPLAINT

POMPANO BEACH, FL 33064
Your item was delivered in or at the mailbox at 10:21 am on February 2, 2021 in POMPANO BEACH, FL 33064.

**February 2, 2021, 10:08 am**
Out for Delivery
POMPANO BEACH, FL 33064

**February 2, 2021, 9:57 am**
Arrived at Post Office
POMPANO BEACH, FL 33060

**February 2, 2021, 8:36 am**
Arrived at USPS Destination Facility
FORT LAUDERDALE, FL 33310

**February 1, 2021, 10:02 pm**
Departed USPS Facility
TAMPA, FL 33630

**February 1, 2021, 7:29 pm**
Arrived at USPS Origin Facility
TAMPA, FL 33630

**February 1, 2021, 3:10 pm**
USPS in possession of item
TAMPA, FL 33629

Product Information ⌄

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**EXHIBIT A TO AMENDED COMPLAINT**